[No. 11746. Department Two. April 27, 1914.]

THE STATE OF WASHINGTON, *on the Relation of Walter C. Leach, Plaintiff*, v. H. O. FISHBACK, *as Insurance Commissioner, Respondent*.[1]

INSURANCE—CONTROL AND REGULATION—FOREIGN CORPORATIONS— DEPOSIT OF SECURITIES—STATUTES—CONSTRUCTION. Reading the insurance code as a whole, the last paragraph of 3 Rem. & Bal. Code, § 6059-24, providing that every insurance company required to have a cash capital shall, on or before January 1st, 1912, deposit with the state treasurer funds and securities equal to the minimum cash capital required by the act, is not inconsistent with the first and second paragraphs (added by amendment) providing that every foreign insurance company required to have a cash capital shall deposit the same amount of securities required of like domestic companies, and that the state treasurer shall receive from domestic companies, the securities required of them by laws of other states as a prerequisite to their transaction of business in other states; it merely being a statement in another form, of Id., § 6059-22, requiring alien insurance companies to deposit not less than $200,000 invested in like manner as required by similar domestic companies, and' fixing the time for such deposit.

SAME. The act will not be construed as permitting alien companies to do business in this state without making the deposit required of domestic corporations, although not required by its home laws to make any deposit, in view of Const., art. 12, § 7, providing

[1]Reported in 140 Pac. 387.

that no foreign corporation shall be allowed to transact business within the state on more favorable conditions than are prescribed by law for similar domestic corporations.

STATUTES—CONSTRUCTION—HISTORY OF ACT.   Where there is no ambiguity or uncertainty in a statute, fair on its face, and the legislative intent is clear, the courts will not refer to the history of the act to determine whether part of the act was inadvertently adopted.

SAME — DEPARTMENTAL  CONSTRUCTION — USAGE.   A construction placed upon the insurance code by the insurance department will not control the courts where property interests have not been thereby acquired by long usage, or where the language is plain and clear and does not admit of substantial doubt.

CONSTITUTIONAL LAW—DUE PROCESS — INSURANCE — REGULATION— FOREIGN CORPORATIONS.  3 Rem. & Bal. Code, § 6059-24, requiring foreign insurance companies to make deposits of securities in the same amount as required by domestic corporations, although not required so to do by its home laws, does not violate the 14th amendment of the Federal constitution, as it is within the power of the state to make reasonable limitations upon the right of such companies to do business in this state.

Application filed in the supreme court December 22, 1913, for a writ of mandamus to the state insurance commissioner. Denied.

*Geo. D. Emery,* for relator.

*The Attorney General* (*L. L. Thompson,* of counsel), for respondent.

MOUNT, J.—This is an application for a peremptory writ of mandate, to the insurance commissioner of this state, to issue a license to the Northwestern Fire and Marine Insurance Company, a corporation of the state of Minnesota, upon its compliance with the requirements of the insurance code of Washington, other than the deposit of securities, as required by 3 Rem. & Bal. Code, § 6059-24.

It appears from the petition that the Northwestern Fire and Marine Insurance Company is a stock company of the state of Minnesota.   This company was incorporated several years prior to the adoption of the insurance code of this state, but did not apply for a license to do business in this

state until after the adoption of the code. The laws of the
state of Minnesota, where the insurance company was incorpo-
rated, make no requirements as to the deposit of securities by
such corporations, either foreign or domestic. Upon an appli-
cation for a license to do business in this state, the same was
refused by the insurance commissioner unless the insurance
company would deposit securities to the amount of $200,000
with the state treasurer of Washington. A petition was
thereupon filed in this court praying for the writ.

The insurance code, 3 Rem. & Bal. Code, § 6059-22, pro-
vides:

"Each alien insurance company admitted to do business
in this state, shall not transact any business of insurance in
this state, unless it shall have within the United States de-
posited with insurance departments, or held in trust as here-
inafter provided, not less than two hundred thousand dollars
invested in like manner as the capital of a similar domestic in-
surance company is required to be invested; . . .

"That no alien company, except co-operative life and fra-
ternal beneficiary insurance companies, shall transact any
business of insurance in this state, unless, if it transact fire
insurance in this state, it has deposited with the proper in-
surance department or legal custodian of such deposit in this
or any other state or states or district of the United States,
for the benefit and security of its policy-holders in the United
States, a sum not less than two hundred thousand dollars, in-
vested as in this act required; or if it transact in this state
one or more of the other kinds of insurance business per-
mitted by the provisions of this act to be transacted by any
such company, it has deposited with the insurance depart-
ment or legal custodian for like purposes, such amount as
may be required of domestic insurance companies doing the
same kind of business. . . ."

Section 6059-24 provides:

"Every foreign insurance company doing business in this
state and required by this act to have a cash capital, shall
deposit and keep on deposit with the state treasurer, through
the office of the insurance commissioner of this state, the same
amount and character of securities which a like domestic

company is required to deposit with the depositary for securities of insurance companies of the state by which laws such insurance company is incorporated.

"When any state shall require insurance companies of other states to deposit with some officer of such other state securities in trust for policy holders of such company as a prerequisite to their transacting business in such state, the treasurer of this state shall receive on deposit from any domestic insurance company the securities required by the laws of such other state.

"Every domestic insurance company required by this act to deposit securities to the amount as provided by this act shall deposit such securities with the state treasurer, and any domestic insurance company may deposit such securities with the state treasurer for the protection of all policy holders of such company. Every domestic insurance company hereafter organized shall deposit with the state treasurer authorized securities in the sum of fifty thousand dollars at or prior to the time it receives a certificate of authority to commence effecting insurance, and the commissioner shall within one year thereafter require such company to make further deposits of such securities sufficient to equal in the aggregate the amount of the minimum capital required by this act of such company.

"Every insurance company, required by this act to have a cash capital, shall, on or before the first day of January, nineteen hundred and twelve, deposit and keep on deposit, with the state treasurer through the office of the commissioner, its funds and securities equal in amount and value to the minimum cash capital required by this act of such company, and which deposits shall be exchanged for investments authorized as provided by this act."

It is apparently conceded by the relator that, if the last paragraph of § 6059-24 above quoted is properly a part of that section, the writ must be denied. But it is argued that this paragraph is not properly a part of the statute, because it was inserted and passed by the legislature through mistake and inadvertence. It is contended that this paragraph is in conflict with the first two paragraphs of § 6059-24 above quoted, and so being, it must be disregarded.

We are referred to the house and senate journals of the legislature of the session of 1911, when the act was passed, to show that the first three paragraphs of this section were inserted by amendment and were intended to take the place of the fourth paragraph. There is, no doubt, some ground for the contention of the relator upon this question, and if § 6059-24 stood alone, it might be necessary to enter into a discussion of the method by which this paragraph was passed by the legislature. In *State ex rel. Aetna Life Ins. Co. v. Schively*, 68 Wash. 503, 123 Pac. 784, we said:

"Where the act as passed contains an ambiguity, either latent or patent, reference may be had to the history of the bill before the legislature, beyond the enrolled bill, to ascertain the legislative intent (*Scouten v. Whatcom*, 33 Wash. 273, 74 Pac. 389, but the intent of an act fair on its face must be ascertained from the language of the act itself."

By reading the act as a whole, in so far as it relates to the right of foreign companies to do business in this state, it seems plain to us that the legislature intended that alien insurance companies are required to deposit with the insurance department of this state or the state where the company is incorporated, not less than $200,000 invested in like manner as the capital of similar domestic insurance companies is required to be invested, and that the fourth paragraph of § 6059-24 is simply a restatement in another form of that idea, and fixes the time when the deposit shall be made. The first two paragraphs of § 6059-24 are reciprocal in their nature, and provide, in substance, that the same amount and character of securities which a like domestic company of this state is required to deposit with the depositaries of other states shall be deposited in this state by insurance companies organized in other states. We are satisfied that it was not the intention of the legislature, when it inserted these provisions, to permit foreign companies to do business in this state under more favorable conditions than domestic companies of the same kind were permitted to do business. If so,

then clearly these provisions are unconstitutional, because the constitution of this state provides at § 7 of article 12:

"No corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state."

The third paragraph of this section expressly provides that every domestic insurance company hereafter organized shall deposit with the state treasurer authorized securities in the sum of $50,000 at or prior to the time it receives its certificate of authority to commence effecting insurance, and the commissioner within one year thereafter shall require such company to make further deposits of such securities sufficient to equal in the aggregate the amount of the minimum capital required by the act. So it is apparent that, if foreign companies organized outside the state in a state which makes no requirements of the deposit of securities by such corporations, either foreign or domestic, shall be allowed to do business in this state without the deposit of securities which domestic companies doing a like business are required to deposit, then such foreign companies are authorized to do business in this state under more favorable conditions than are prescribed by law for similar corporations of this state, in direct conflict with the constitutional provision above quoted. When all these provisions of the statute are read together, we are satisfied that there is no such ambiguity or inconsistency as to require us to determine whether the fourth paragraph of § 6059-24 was inadvertently adopted or not. The statute is fair upon its face and must be construed as we find it. It was, presumably at least, passed by the legislative department and approved by the governor as it appears upon its face to have been passed, and speaks the intention of the legislative department. This paragraph we think is in accord with the first and sixth paragraphs of § 6059-22 above quoted, and so far as this relator is concerned, adds nothing that is not required by the provisions of § 6059-22.

We are satisfied from the provisions of the insurance code above quoted that it was the legislative intent that all insurance companies, whether domestic or foreign, seeking the right to do business in this state after the passage of the act, are required to make the deposits therein stated, either in this state or in the state where the company is organized.

Counsel for the relator argue that, because the insurance commissioner has heretofore construed the statute so as to permit foreign insurance companies to do business in this state without making the deposit required by the act, that construction should be adopted by this court. This is, no doubt, true where a departmental construction has been placed upon an act and property interests have been acquired by long usage. But this rule is subject to modification. In Black, Interpretation of Laws (2d ed.), p. 295, the rule is stated as follows:

"Again, it must not be forgotten that usage, like all other extraneous aids in statutory construction, may be resorted to only when the meaning of the statute is involved in doubt or obscurity. If the act is so plain and clear in its terms as not to admit of any substantial doubt, the courts are bound to put upon it that construction which its terms demand, and to disregard any and all contrariant usages or popular opinions."

And this is no doubt the correct rule. We think there can be no doubt that the legislature did not intend that companies situated as this company was should be permitted to do business in this state upon more favorable terms than domestic companies.

Counsel for the relator further urge that the construction placed upon § 6059-24 is in violation of the 14th amendment to the Federal constitution. But we are satisfied that this act is not in violation of that provision of the constitution. It is within the power of the state to make such reasonable limitations upon the right of foreign companies to do business in this state as it deems proper. It was said by Judge Field in *Paul v. Virginia*, 8 Wall. (U. S.) 168:

"The corporation being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created.  .  .  .  The recognition of its existence even by other states and the enforcement of its contracts made therein, depend purely upon the comity of those states —a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy.  Having no absolute right of recognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose.  They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest.  The whole matter rests in their discretion."

We are satisfied, therefore, that these provisions are not in conflict with the Federal constitution, and as we have construed them above, are not in conflict with the constitution of this state, and that the insurance commissioner properly refused the application unless the insurance company should deposit the securities demanded.

The writ is therefore denied.

CROW, C. J., PARKER, FULLERTON, and MORRIS, JJ., concur.