**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**FEBRUARY 28, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BENTON COUNTY WATER CONSERVANCY BOARD, | ) ) ) | No. 38803-4-III |
| Respondent, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF ECOLOGY, | ) ) ) | |
| Appellant. | ) ) | |

PENNELL, J. — The Benton County Water Conservancy Board petitioned the superior court for judicial review under the Administrative Procedure Act, chapter 34.05 RCW, seeking to enjoin the Department of Ecology's refusal to accept and record certain agreed administrative divisions of water rights. The trial court ruled in favor of the Board, but we reverse. The Board has not established standing to challenge Ecology's administrative division decisions. The petition must therefore be dismissed.

## WATER RIGHTS BACKGROUND

Since the water code was initially adopted in 1917, Washington's waters have been considered public property, not subject to private ownership. RCW 90.03.010; RCW 90.44.040.[1] Although private individuals cannot own water, they can acquire the

_____

[1]Surface water rights are addressed in chapter 90.03 RCW. Ground water rights are addressed in chapter 90.44 RCW. This case involves only surface water rights.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38803-4-III
*Benton County Water Conservancy Bd. v. Dep't of Ecology*

right to appropriate water for beneficial use. *Id*. This is what is known as a water right.

*Dep't of Ecology v. U.S. Bureau of Reclamation*, 118 Wn.2d 761, 766, 827 P.2d 275

(1992).

Water rights attach to the "land or place upon which the same is used."

RCW 90.03.380(1). Nevertheless, in appropriate circumstances, the right "may be

transferred to another or to others and become appurtenant to any other land or place

of use." *Id*. The Washington Legislature has tasked the Department of Ecology with

processing applications to change or transfer water rights. *Id*. The change application

process is not automatic. Before approving an application to change a characteristic of a

water right, including its place of use, Ecology must assess whether the change can be

made without injury or detriment to existing rights. *Id*. This involves assessing whether

the water right has been "beneficially used to its full extent." *Okanogan Wilderness*

*League, Inc. v. Town of Twisp*, 133 Wn.2d 769, 779, 947 P.2d 732 (1997). If Ecology

approves a change application, it must issue a certificate, record the certificate internally,

and make a duplicate copy available for the county auditor. RCW 90.03.380(1).

An assessment of the term "beneficial use" is critical to understanding the contours

of a water right. "'[B]eneficial use' encompasses two principles. . . . First, 'beneficial

use' refers to the types of activities for which water may be used (e.g., irrigation or

2

No. 38803-4-III
*Benton County Water Conservancy Bd. v. Dep't of Ecology*

agriculture) . . . . Second, 'beneficial use' determines the measure of a person's water right (i.e., a person is entitled to the amount of water he or she has traditionally put to beneficial use)." *Cornelius v. Dep't of Ecology*, 182 Wn.2d 574, 605, 344 P.3d 199 (2015).

If a water right holder ceases putting water to beneficial use, the right may be subject to relinquishment. *See* RCW 90.14.130-.180; *Dep't of Ecology v. Aquavella*, 131 Wn.2d 746, 757-58, 935 P.2d 595 (1997). When a water right is relinquished, it reverts to the State of Washington. RCW 90.14.130.

A water right holder can avoid relinquishment by temporarily transferring its water right to the State through its trust water rights program, which is managed by the Department of Ecology. RCW 90.14.140(2)(h). "Trust water rights acquired by the [S]tate shall be held in trust and authorized for use by the [D]epartment [of Ecology] for instream flows, irrigation, municipal, or other beneficial uses consistent with applicable regional plans for pilot planning areas, or to resolve critical water supply problems." RCW 90.42.040(1). A water right temporarily donated to the trust water rights program eventually reverts back to the certificate holder, retaining its original use characteristics. RCW 90.42.080(9).

Over the years, the State has adopted procedures for facilitating uncontested water

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38803-4-III
*Benton County Water Conservancy Bd. v. Dep't of Ecology*

right transfers. Water conservancy boards were created to administer uncontested transfers, changes, amendments, or other alterations of water rights within a board's geographic jurisdiction. *See* RCW 90.80.005, .020, .030, .070. All board decisions are subject to approval by the Department of Ecology. RCW 90.80.080; WAC 173-153-150. Ecology generally has 45 days to affirm, reverse, or modify an action by a conservancy board. RCW 90.80.080(4); WAC 173-153-150(5)(c). Ecology's decision is subject to appeal to the Pollution Control Hearings Board. RCW 90.80.090; WAC 173-153-180.

The Department of Ecology has also adopted an internal policy entitled the "Administrative Policy for Recording the Agreed Division of Water Rights Among Multiple Property Owners." Clerk's Papers (CP) at 152-54 (some capitalization omitted). Originally adopted in 2003, this policy is also commonly known as "POL-1070." *Id*. POL-1070 enables Ecology to track and record an agreed division of water rights when multiple parties own a piece of land to which a single water right is appurtenant. *Id*. at 152. Pursuant to POL-1070, Ecology has promulgated "Form ECY 070-88," entitled "Request for Administrative Confirmation of Division of a Water Right." *Id*. at 10-12; *see also id*. at 153-54. POL-1070 enables property owners requesting a division of water rights to receive superseding water-rights documents.

POL-1070 was not adopted pursuant to a statutory mandate. Instead, POL-1070

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38803-4-III
*Benton County Water Conservancy Bd. v. Dep't of Ecology*

appears to have been adopted as a way of streamlining the apportionment of water rights pursuant to a division in ownership that reflects "the historic beneficial use of water on the property" to which the right attaches. *Id*. at 153. POL-1070 states in multiple instances that it does not prevent "a water right holder from seeking a change via RCW 90.03.380 . . . or other applicable statutes." *Id*. at 152-53.

### THE BOARD'S POSITION REGARDING ADMINISTRATIVE DIVISIONS AND POL-1070

The Benton County Water Conservancy Board believes Ecology has been misusing POL-1070 in an effort to interfere with the alienation of water rights. According to the Board, Ecology refuses to confirm agreed divisions of water rights if the water rights are temporarily placed in trust. The Board claims this is problematic because a division confirmation "operates as a sort of quit claim deed to update the ownership records in Ecology's Water Rights Tracking System." *Id*. at 5.[2] The Board claims that when Ecology refuses to authorize a division request, it interferes with the Board's ability to perform its legislatively authorized function of processing water right transfer applications. The Board also complains that by refusing to process divisional requests

---

[2] The authority cited in support of this claim is RCW 90.14.010 and RCW 90.54.030, which require Ecology to maintain records for the efficient administration of our state's waters.

5

No. 38803-4-III
*Benton County Water Conservancy Bd. v. Dep't of Ecology*

for rights that are temporarily held in trust, Ecology is not maintaining an accurate record of water rights ownership, in violation of statutory mandates. *See* RCW 90.14.010; RCW 90.54.030.

## FACTS AND PROCEDURAL HISTORY

In 2015, Plymouth Ranch, LLC, temporarily donated a portion of its water right, G4-26018C, to Ecology's trust water program. At some point after the donation, Plymouth Ranch sold a portion of its property, but retained the water rights associated with that property, some of which were those donated to the trust water program. In June 2020, Plymouth Ranch extended its water right donation of portions of G4-26018C through the year 2030, and donated additional water rights to the trust program, including portions of water rights G4-26464C and G4-31006C.

Soon after Plymouth Ranch extended its donation, it sold the trusted portions of water rights G4-26018C and G4-26464C to Frank Tiegs, LLC. Tiegs did not own the land to which those water right certificates were appurtenant. In June 2021, Plymouth and Tiegs filed a request for administrative confirmation of a division of a water right, using Form ECY 070-88.[3] CP at 45-46.

---

[3] The administrative division documents were submitted by the Benton County Water Conservancy Board on behalf of Plymouth Ranch and Frank Tiegs, LLC.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38803-4-III
*Benton County Water Conservancy Bd. v. Dep't of Ecology*

Ecology denied the request for administrative confirmation of division, referencing POL-1070. In an August 2021 letter directed to Plymouth and Tiegs, Ecology identified several deficiencies in the requested administrative divisions which it stated "must be addressed prior to Ecology agreeing to divide" the certificates. *Id*. at 31. One of the problems identified by Ecology was the fact that Tiegs did not own the property within the authorized place of use. Ecology's denial of the administrative division informed Plymouth and Tiegs of their right to appeal Ecology's decision to the Pollution Control Hearings Board within 30 days of receipt of the denial. No appeal was filed.

In September 2021, the Board petitioned the Benton County Superior Court under the Administrative Procedure Act (APA), chapter 34.05 RCW, for judicial review of Ecology's decision. The Board stated it had the power to "'sue or be sued'" and was bringing the action because Ecology's refusal to administratively divide water rights interfered with the Board's statutory duty to process water right transfer applications. CP at 2 (quoting RCW 90.80.060)). The Board claimed it was entitled to judicial review of Ecology's actions under the APA because Ecology's denial of voluntary division requests was "'outside the statutory authority of the agency or the authority conferred by provision of law'" or "'arbitrary or capricious.'" *Id*. at 8 (quoting RCW 34.05.570(4)(c)(ii)-(iii)). Alternatively, the Board claimed Ecology's ongoing refusal to administratively divide

7

No. 38803-4-III
*Benton County Water Conservancy Bd. v. Dep't of Ecology*

water rights placed in trust represented an agency rule that was not promulgated pursuant

to required rulemaking procedures, as outlined in RCW 34.05.570(2).

ANALYSIS

This case comes to us as a challenge to agency action under the APA. A

preliminary issue under the APA is standing. The Board, as the petitioner for judicial

review, bears the burden of establishing standing. *KS Tacoma Holdings, LLC v.*

*Shorelines Hr'gs Bd.*, 166 Wn. App. 117, 127, 272 P.3d 876 (2012). We review de novo

the question of whether this burden has been met, without deference to the superior court.

*In re Est.of Becker,* 177 Wn.2d 242, 246, 298 P.3d 720 (2013); *Patterson v. Segale*, 171

Wn. App. 251, 257, 289 P.3d 657 (2012).

Under the APA, a party has standing to obtain judicial review of an agency action

if that person is aggrieved or adversely affected by the agency action. RCW 34.05.530.

A party is aggrieved or adversely affected when three conditions are present:

> (1) The agency action has prejudiced or is likely to prejudice that
> person;
> (2) That person's asserted interests are among those that the agency was
> required to consider when it engaged in the agency action challenged; and
> (3) A judgment in favor of that person would substantially eliminate or
> redress the prejudice to that person caused or likely to be caused by the
> agency action.

8

No. 38803-4-III
*Benton County Water Conservancy Bd. v. Dep't of Ecology*

*Id.* The first and third of the aforementioned prongs "are generally called 'injury-in-fact'

requirements, while the second is called the 'zone of interest' prong." *Allan v. Univ. of*

*Wash.*, 92 Wn. App. 31, 36, 959 P.2d 1184 (1998) (quoting *St. Joseph Hosp. & Health*

*Care Ctr. v. Dep't of Health*, 125 Wn.2d 733, 739, 887 P.2d 891 (1995)), *aff'd*, 140

Wn.2d 323, 997 P.2d 360 (2000). A petitioner must satisfy all three prongs in order to

establish standing. *Id.*

We focus our analysis on the APA's injury-in-fact prongs. The Board argues it has

suffered an injury-in-fact as a result of Ecology's handling of POL-1070. According to

the Board, Ecology's refusal to accept all agreed divisions of water rights under POL-

1070 interferes with the Board's ability to accurately track ownership of water rights and

process change applications. We disagree.[4]

The Board's criticisms of Ecology stem from a mischaracterization of POL-1070.

According to the Board, the administrative division of water rights under POL-1070 and

Form ECY 070-88 operates as a type of quit claim deed, which Ecology is duty-bound

to record. But the only authority offered by the Board for the analogy to a quit claim deed

---

[4] The Board also claims it has standing because it has the power to "sue and be sued." RCW 90.80.060(1). The right to sue is fairly ubiquitous and is insufficient to confer standing under the APA.

9

No. 38803-4-III
*Benton County Water Conservancy Bd. v. Dep't of Ecology*

is its own statements. *See* CP at 5, 123, 171. No statute, regulation, or policy states

that POL-1070 operates as a ministerial, quit claim deed process.

By its plain terms, POL-1070 was adopted to streamline the apportionment

of water rights stemming from certain types of simple property divisions.[5] The benefit

of POL-1070 is to avoid the more cumbersome change application process under

RCW 90.03.380. POL-1070 was not created pursuant to a legislative mandate. Thus,

Ecology is not duty-bound to process division requests that do not meet Ecology's

chosen criteria. The fact that a request to divide water rights fails to meet the criteria set

by Ecology in POL-1070 does not mean that the parties to the request have not validly

transferred ownership in a water right. It simply means the parties must use a separate

process, such as a change application under RCW 90.03.380, to determine how the water

right will be apportioned.

The Board seems to suggest that if Ecology is not using POL-1070 as a method

of recording water right transfers, it is failing its statutory duty to maintain water right

records under RCW 90.54.030. We disagree. While the legislature has tasked Ecology

with maintaining water right records, it has not directed Ecology to do so in a specific

---

[5] As previously explained, POL-1070 applies only to the unique situation where a piece of land with one appurtenant water right is divided up between multiple owners.

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38803-4-III
*Benton County Water Conservancy Bd. v. Dep't of Ecology*

manner. Ecology admits it uses POL-1070 as a tool for documenting certain divisional water right transfers. But this does not mean it is the only tool for documenting changes in water rights. The Board's claim that Ecology's limited use of POL-1070 means Ecology is failing in its record-keeping duties amounts to nothing more than conjecture. This is insufficient to establish an injury-in-fact as required for APA standing. *Freedom Found. ex rel. State v. Bethel Sch. Dist.*, 14 Wn. App. 2d 75, 86, 469 P.3d 364 (2020).

The Board has not demonstrated any injury-in-fact resulting from Ecology's application of POL-1070. It has therefore failed to establish standing pursuant to the APA. RCW 34.05.530(1), (3). The trial court's decision granting relief under the APA must therefore be reversed.

## CONCLUSION

The trial court's order of summary judgment in favor of the Benton County Water Conservancy Board is reversed. The petition for judicial review is dismissed for lack of standing.

_____
Pennell, J.

WE CONCUR:

_____     _____
Fearing, J.                          Staab, J.

11